| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| **McCABE, WEISBERG & CONWAY, LLC**<br>**By:  James French, Esq.**<br>**216 Haddon Avenue, Suite 201**<br>**Westmont, New Jersey 08108**<br>**856-858-7080**<br>Attorneys for Secured Creditor,<br>Everbank/TIAA, FSB | Lead Case No.:  19-19513-JKS<br>Chapter:  7<br>Judge:  John K. Sherwood |
| In RE:<br>John Patrick O'Grady,<br><br>                         Debtor | **SUPPLEMENTAL CERTIFICATION OF JAMES A. FRENCH, ESQ.** |

I, James A. French, Esq., of full age, hereby certify as follows:

1.      I am an attorney licensed to practice law in the State of New Jersey and an associate with McCabe, Weisberg, & Conway, LLC, attorneys for Secured Creditor, Everbank, n/k/a TIAA, FSB, d/b/a TIAA Bank ("Everbank" or "Secured Creditor") in the above-captioned action.  As such, I have personal knowledge of the facts set forth herein.

2.      I make this certification in connection with the Court's instruction and in further support of Secured Creditor's Limited Objection to the Motion to Sell the Subject Property Free and Clear Liens.

3.      Specifically, Secured Creditor hereby renews its objection to the motion to the extent it will not be paid in full.

4.      By way of background, Secured Creditor held a mortgage in the original amount of $650,000.00 executed by Debtor, John O'Grady ("Debtor") against the real property located at 91 Midvale Mountain Road, Mahwah, New Jersey 07430 (the "Property"), which mortgage was recorded in the Office of the Clerk of Bergen County on April 26, 2005 in Book 14295, Page 299.  A true and correct copy of the recorded mortgage and corresponding note are attached hereto as **Exhibit A**.

5.      The mortgage was assigned to Secured Creditor by way of written assignment of mortgage, which assignment was recorded in the Office of the Clerk of Bergen County on February 13, 2017 in Book 2533, Page 978.  A true and correct copy of the recorded assignment is attached hereto as **Exhibit B**.

6.      The mortgage loan held by Secured Creditor is the first-position mortgage lien against the property.

7.      Beginning on or before July 1, 2016, Debtor defaulted on the mortgage loan, which default remained uncured and as a result, Secured Creditor filed its Mortgage Foreclosure Complaint in the Superior Court of New Jersey, Chancery Division, Bergen County on April 20, 2017.  A true and correct copy of the filed complaint is attached hereto as **Exhibit C**.

8.      On August 17, 2018, Secured Creditor filed its motion for final judgment, which motion the court granted on September 7, 2018 and final judgment in foreclosure was entered for Secured Creditor in the amount of $544,068.68 plus a counsel fee in the amount of $5,590.68. True and correct copies of the final judgment order and Secured Creditor's affidavit of amount due, which affidavit includes charges incurred on the mortgage loan through July 13, 2018, are attached hereto as **Exhibit D**.

9.      The Chapter 7 Trustee recently filed a motion to sell the subject property free and clear of liens to third-party purchasers for a total amount of $1,018,000.00, which motion the court granted, thereby approving the sale for a closing date of February 15, 2022.

10.      Pursuant to the court's request, below is a breakdown of what is due on Secured Creditor's first-position mortgage lien on the property.

11.     The final judgment for Secured Creditor was entered in the Superior Court of New Jersey on September 7, 2018 in the original amount of $544,068.68 and a counsel fee of $5,590.68.

12.     Pursuant to R. 4:42-11(a), Secured Creditor is entitled to post-judgment interest at the state-level statutory rate; applying post-judgment interest at the statutory rate from September 8, 2018 through the scheduled February 15, 2022 closing, the total post-judgment interest that must be added to the judgment figure is $30,865.23.

13.     Moreover, pursuant to R. 4:42-9(a)(4), Secured Creditor was awarded a recoverable counsel fee in the amount of $5,590.68.

14.     Per Secured Creditor's internal records, from the July 13, 2018 affidavit of amount due through the present date, Secured Creditor has incurred property-preservation expenses including taxes and insurance; moreover, Debtor made certain post-petition payments that must be credited to the account.  A true and correct copy of Secured Creditor's internal records from July 13, 2018 through the present date is attached hereto as **Exhibit E**.

15.     Per Secured Creditor's internal records, a total of $97,505.77 was disbursed for taxes and insurance against the property, which disbursements are outlined on the chart at Exhibit E, and are broken down below.

| | |
|---|---|
| 07/16/2018 Tax Disbursement | $5,767.22 |
| 10/10/2018 Tax Disbursement | $5,643.45 |
| 01/28/2019 Tax Disbursement | $5,615.61 |
| 04/10/2019 Tax Disbursement | $5,615.61 |
| 05/09/2019 Insurance Disbursement | $3,095.00 |
| 07/18/2019 Tax Disbursement | $5,826.00 |
| 10/15/2019 Tax Disbursement | $5,727.00 |
| 01/15/2020 Tax Disbursement | $5,696.06 |
| 04/10/2020 Tax Disbursement | $5,696.05 |
| 05/11/2020 Insurance Disbursement | $3,136.00 |
| 07/22/2020 Tax Disbursement | $6,085.90 |
| 10/09/2020 Tax Disbursement | $6,085.89 |

| | |
|---|---|
| 01/08/2021 Tax Disbursement | $5,890.98 |
| 04/19/2021 Insurance Disbursement | $3,334.00 |
| 04/26/2021 Tax Disbursement | $5,890.97 |
| 07/14/2021 Tax Disbursement | $6,249.88 |
| 10/28/2021 Tax Disbursement | $6,113.75 |
| 01/27/2022 Tax Disbursement | $6,036.40 |
| **Total Disbursements** | **$97,505.77** |

16.     Pursuant to 11 U.S.C. § 506(b), these are permitted necessary and essential charges to protect the property and are therefore, recoverable.

17.     Moreover, per Secured Creditor's internal records, a total of $42,185.72 post-petition payments were received on this account from the Debtor, which post-petition payments are outlined on the chart at Exhibit E, and are broken down below.

| | |
|---|---|
| 05/01/2020 Funds Application | $5,255.29 |
| 05/14/2020 Funds Application | $5,255.29 |
| 06/11/2020 Funds Application | $5,255.29 |
| 08/24/2020 Funds Application | $5,283.97 |
| 09/02/2020 Funds Application | $5,283.97 |
| 09/03/2020 Funds Application | $5,283.97 |
| 10/02/2020 Funds Application | $5,283.97 |
| 10/29/2020 Funds Application | $5,283.97 |
| **Total Post-Petition Payments** | **$42,185.72** |

18.     From the foregoing, the total amount due to Secured Creditor is $635,844.64.

19.     Shortly after obtaining judgment, Secured Creditor submitted its writ to the Bergen County Sheriff's Office to set a sheriff sale date, and a sheriff sale date was set.

20.     Because a sheriff sale date was set by the sheriff, N.J.S.A. § 22A:4-8 provides that the sheriff is entitled to a commission of 6% of the first five thousand and 4% of the remainder realized at any foreclosure sale.

21.     When the matter settles by any way other than sheriff sale, for example through a sale resulting in a full payoff as would be the case here, the sheriff is entitled to 50% of its commission.

22.     If Secured Creditor is paid its entire amount due outlined above of $635,844.64, the total commission due the sheriff would be $12,766.89, which amount should also be paid out to Secured Creditor, as this was a legitimate cost incurred prosecuting its foreclosure.

23.     Accordingly, the amounts due to Secured Creditor are as follows:

| | |
|---|---|
| 09/07/2018 Foreclosure Judgment | $544,068.68 |
| Post-Judgment Interest on the Judgment | $30,865.23 |
| Counsel Fee provided by judgment | $5,590.68 |
| Post-Judgment Tax/Insurance Disbursements | $97,505.77 |
| Post-Petition Payments Made by Debtor | $42,185.72 |
| Sheriff Commission per N.J.S.A. § 22A:4-8 | $12,766.89 |

**Total Amount Due on First-Position Mortgage:  $648,610.92**

I hereby certify that the foregoing statements made by me are true and correct to the best of my knowledge.  I am aware that if any of the foregoing statements made by me are intentionally false, I am subject to punishment.

**McCABE, WEISBERG, & CONWAY, LLC**

 _/s/ James A. French_
James A. French, Esq.

Dated: February 4, 2022

# EXHIBIT A

John M. Kolesnik
Attorney at Law        **Certified True Copy**

# ADJUSTABLE RATE NOTE
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

September 10, 2003          LEWISVILLE             Texas
    *[Date]*                 *[City]*            *[State]*

91 Midvale Mountain Road, Mahwah, NJ 07430
*[Property Address]*

**1.      BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $  650,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Everbanc Mortgage Company LLC dba pricelinemortgage
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.      INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   3.625   %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.      PAYMENTS**

**(A)      Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  November, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   October 1, 2033    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   Alliance Mortgage Company, P.O. Box 530579, Atlanta, GA 30353-0579            or at a different place if required by the Note Holder.

**(B)      Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $  2,964.33      . This amount may change.

**(C)      Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)      Change Dates**

The interest rate I will pay may change on the first day of   October, 2006    , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)      The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

Loan No: ███████          MIN: ███████

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and 250/1000ths**                    percentage points ( **2.250**        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        **5.625**        % or less than **2.250**        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than        **9.625**        %.

(E)    **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        **15**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        **5.000**        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)    **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)    **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the

interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D)    **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E)    **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

       If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
John P. O'Grady                    -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF _____

WITHOUT RECOURSE
BY: EVERBANC MORTGAGE COMPANY LLC DBA
     PRICELINE MORTGAGE

SIGNED: _____
    BETTY Y. ELLIS
    Asst. Vice President

## ALLONGE TO NOTE

**LOAN #** ███████████

**BORROWER:** JOHN P. O'GRADY

**PROPERTY: 91 MIDVALE MOUNTAIN ROAD, MAHWAH, NJ 07430**

**LOAN AMT: $650,000.00**

**NOTE DATE: SEPTEMBER 10, 2003**

PAY TO THE ORDER OF:
  EverBank

WITHOUT RECOURSE
BY: EVERBANC MORTGAGE COMPANY, LLC, D/B/A PRICELINEMORTGAGE

SIGNED:_____
  Michael Grant
  Asst. Vice President

John M. Kolesnik
Attorney at Law

*Certified True Copy*

After recording please return to:

RECORDING DEPARTMENT
First American Lenders Advantage
1801 Lakepointe Drive, Suite 111
Lewisville, TX 75057

50976    Mortgage
Kathleen A. Donovan   Recording Fee 200.00
Bergen County Clerk   Charge 213
Recorded 04/26/2005 11:45 DIRECT TITLE & C
L

Recording Requested by
First American Title Insurance Co.

Prepared by:

*Philip C. Chapman*
[Signature of Natural Person]
William H. Peirson  *William H Peirson*
Philip L. Chapman, Esq. (Co-Counsel)
[Name of Natural Person]
4400 Alpha Road
103 Eisenhower Parkway
[Street Address]
Dallas, TX 75244
Roseland, NJ 07068
[City, State Zip Code]
972-392-7770

PLEASE RECORD AND RETURN TO:
REALTY GUARDIAN/DIRECT TITLE
400 WEST MAIN STREET
FREEHOLD, NJ 07728
(732) 780-0900
FILE NO. *AF 33804*

——— [Space Above This Line For Recording Data] ———

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "**Security Instrument**" means this document, which is dated       September 10, 2003         , together with all Riders to this document.

(B)    "**Borrower**" is John Patrick O'Grady

. Borrower is the mortgagor under this Security Instrument.

Loan No:

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3031 01/01
—THE COMPLIANCE SOURCE, INC.—                                                                                   14301NJ 08/00
www.compliancesource.com                           Page 1 of 14                              ©2000, The Compliance Source, Inc.

BK I 4295 PG 299

(C)  "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "**Lender**" is  Everbanc Mortgage Company LLC dba pricelinemortgage

Lender is a                  corporation                  organized and existing under the laws of
Delaware                                    . Lender's address is  8201 Cypress Plaza
Drive, Suite 100, Jacksonville, FL 32256

(E)  "**Note**" means the promissory note signed by Borrower and dated  September 10, 2003        .
The Note states that Borrower owes Lender  six hundred fifty thousand and NO/100ths
                                                      Dollars (U.S. $ 650,000.00        )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  October 1, 2033 .

(F)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider         ☐ Revocable Trust Rider
☐ Other(s) [specify]

(I)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "**Escrow Items**" means those items that are described in Section 3.

Loan No: ▮▮▮▮▮▮▮
New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            MERS Modified Form 3031 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 2 of 14                14301NJ 08/00
www.compliancesource.com                                                    ©2000, The Compliance Source, Inc.

BK 14295 PG 3001

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the                                    **County**

*[Type of Recording Jurisdiction]*

of            **Bergen**                              :
                  *[Name of Recording Jurisdiction]*

See Exhibit "A" attached hereto and made a part hereof.

APN: Block 1 Lot 159.02

This being the same property conveyed to John Patrick O'Grady by deed from *Fox River L.L.C* in deed dated *11-9-01* and recorded in *Book 8428 Page 478* of the County Clerk's office of Bergen County, New Jersey.

which currently has the address of                    91 Midvale Mountain Road
                                                                      *[Street]*

        Mahwah                  , New Jersey            07430             ("Property Address"):
        *[City]*                                        *[Zip Code]*

Loan No: ▮▮▮▮▮▮▮

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
   2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Loan No █████████

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 4 of 14
www.compliancesource.com

MERS Modified Form 3031  01/01
14301NJ 08/00
©2000, The Compliance Source, Inc.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground

Loan No: ▇▇▇▇▇▇▇▇

rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction,

Loan No: ▓▓▓▓▓▓▓▓▓

BK 1 4 2 9 5 PG 3 0 4

provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of

the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Loan No ████

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the

Loan No:

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT — THE COMPLIANCE SOURCE, INC.— www.compliancesource.com

Page 9 of 14

MERS Modified Form 3031 01/01
14301NJ 08/00
©2000, The Compliance Source, Inc.

BK 14295 PG 307

Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change

Loan No: ▇▇▇▇▇

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               MERS Modified Form 3031 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 10 of 14                                        14301NJ 08/00
www.compliancesource.com                                                                      ©2000, The Compliance Source, Inc.

BK 14295 PG 308

of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Loan No: ███████

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           MERS Modified Form 3031  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 11 of 14                              14301NJ 08/00
www.compliancesource.com                                                           ©2000, The Compliance Source, Inc.

BK 14295 PG 309

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Loan No: ▮▮▮▮▮▮▮▮

New Jersey Mortgage-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3031 01/01
—THE COMPLIANCE SOURCE, INC.—                     Page 12 of 14                          14301NJ 08/00
www.compliancesource.com                                                          ©2000, The Compliance Source, Inc.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                                          John P. O'Grady                 -Borrower
                                                                          *[Printed Name]*

Printed Name: _____
              *[Please Complete]*

_____          _____ (Seal)
                                                                          -Borrower
                                                                          *[Printed Name]*

Printed Name: _____
              *[Please Complete]*

                                          _____ (Seal)
                                                                          -Borrower
                                                                          *[Printed Name]*

                                          _____ (Seal)
                                                                          -Borrower
                                                                          *[Printed Name]*

———————————— *[Acknowledgment on Following Page]* ————————————

Loan No: ▮▮▮▮▮▮

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                Page 13 of 14
www.compliancesource.com

MERS Modified Form 3031  01/01
14301NJ 08/00
©2000, The Compliance Source, Inc.

BK 14295 PG 3111

State of _NJ_           §
                        § SS.
County of _Bergen_      §

    On _9/10/03_                      , before me  Yongho Choi, Notary public
                                                  *[name and title of the officer]*,

personally appeared   John P. O'Grady

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the instrument as
his/her/their own act.

YONGHO CHOI
Notary Public
State of New Jersey
My Commission Expires Oct 29, 2006

Signature  _Yongbae Choi_
           *[Printed Name]*
           _Notary public_
Title of Officer

Loan No: ▆▆▆▆▆

New Jersey Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3031  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 14 of 14                        14501NJ  08/00
www.compliancesource.com                                                              ©2000, The Compliance Source, Inc.

BK 14295 PG 312

# ADJUSTABLE RATE RIDER
## (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **10th** day of **September, 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Everbanc Mortgage Company LLC dba pricelinemortgage** (the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

**91 Midvale Mountain Road, Mahwah, NJ 07430**

*[Property Address]*

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **3.625** %.  The Note provides for changes in the interest rate and the monthly payments as follows:

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A)     Change Dates**
The interest rate I will pay may change on the first day of **October, 2006**, and on that day every 12th month thereafter.  Each date on which my interest rate could change is called a "Change Date."
**(B)     The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Loan No: ▮▮▮▮▮                                          MIN: ▮▮▮▮▮
Multistate Adjustable Rate Rider—WSJ One-Year LIBOR–Single Family–Fannie Mae UNIFORM INSTRUMENT          Form 3189 6/01
—THE COMPLIANCE SOURCE, INC.—                    Page 1 of 3                                      2463MU 08/01
www.compliancesource.com                                                                          ©2001, The Compliance Source, Inc.

BK 1 4 2 9 5 PG 3 1 3 1

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   **two and 250/1000ths**   percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   **5.625** % or less than   **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   **9.625** %. .

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

<u>Loan No:</u> ██████

Multistate Adjustable Rate Rider—WSJ One-Year LIBOR–Single Family–Fannie Mae UNIFORM INSTRUMENT       Form 3189  6/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 2 of 3 ████████           24634MU 08/01
www.compliancesource.com                                                      ©2001, The Compliance Source, Inc.

BK I 4 2 9 5 PG 3 I 4

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
John P. O'Grady          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

Loan No ████████

Multistate Adjustable Rate Rider--WSJ One-Year LIBOR--Single Family--Fannie Mae UNIFORM INSTRUMENT        Form 3189  6/01
--THE COMPLIANCE SOURCE, INC.--                          Page 3 of 3                          2436MU  08/01
www.compliancesource.com                                                                ©2001, The Compliance Source, Inc.

BK 14295 PG 3151

## LEGAL DESCRIPTION

### File Number: DT-AF33804

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Mahwah, County of Bergen and State of New Jersey:

BEING known and designated as Lot 159.02 in Block 1 as shown on map entitled "Midvale Mountain Estate Block 1 Lot 159, Township of Mahwah, Bergen County, N.J. Subdivision Plat", duly filed in Bergen County Clerk's Office on August 20, 2001 as Filed Map No. 9240.

BEING known as Lot(s)159.02 in Block 1 on the Tax Map of the Township of Mahwah.

BK 14295 PG 3161

**END OF DOCUMENT**

# EXHIBIT B



John M. Kolesnik
Attorney at Law

*Certified True Copy*

INSTRUMENT # 17-013843

V 02533 0978

RECORDED DATE: 02/13/2017 09:30:11 AM



## John S. Hogan
## Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



| | |
|---|---|
| **Document Type:** Assignment of Mortgage | Transaction #: 7405921 |
| | Document Page Count: 1 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MCCABE, WEISBERG &CONWAY, P.C. ( NEW JERSEY) | McCabe, Weisberg &Conway, P.C. ( New Jersey) |
| 216 HADDON AVE | |
| WESTMONT  NJ  08108 | |
| ERECORDED | |
| | (856) 858-7080 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED | EVERBANK |

ASSOCIATED DOCUMENT(S): MTGE 14295 0299

| | |
|---|---|
| MUNICIPALITY: MAHWAH | **INSTRUMENT #: 17-013843** |
| | Recorded Date: 02/13/2017 09:30:11 AM |
| FEES / TAXES: | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Recording: $43.00 | |
| Total: $43.00 | John S. Hogan |
| | **Bergen County Clerk** |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 2

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen / ███████ RECORD & RETURN TO: McCabe, Weisberg & Conway; 216 Haddon Avenue, Ste. 201; Westmont NJ 08108

(This space for recording information)

## ASSIGNMENT OF MORTGAGE

MIN: ███████████                    MERS Phone: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS:

    **Mortgage Electronic Registration Systems, Inc., as nominee for Everbanc Mortgage Company LLC dba PRICELINEMORTGAGE, its successors and assigns**, located at P.O. Box 2026, Flint, Michigan 48501, herein designated as the Assignor, does by these presents does convey, grant, assign, transfer and set over to, **EverBank**, located at 301 West Bay Street, Jacksonville, Florida 32202, all its rights, interests and title due or to become due in and to a certain Mortgage dated September 10, 2003 made by John Patrick O'Grady on lands located in the Township of Mahwah, County of Bergen and State of New Jersey, to secure payment of the sum of $650,000.00, with said Mortgage being recorded April 26, 2005 in the Bergen County Register's Office in Mortgage Book 14295 Page 299.

    IN WITNESS WHEREOF, the said Assignor has caused these presents to be signed by its proper corporate officers and its seal to be hereto affixed as of the 31st day of January, 2017.

Witness: *Todd Ierna*
          *Todd Ierna*

                              Mortgage Electronic Registration Systems, Inc., as nominee for Everbanc Mortgage Company LLC dba PRICELINEMORTGAGE, its successors and assigns,

                              By: *Belinda Roane*
                              Titl: **Belinda Roane** Assistant Vice President

STATE OF **Florida**, COUNTY OF **Duval** SS:

    I CERTIFY that on Jan. 31, 2017, Belinda Roane personally came before me and acknowledged under oath, to my satisfaction, that **Belinda Roane**
    (a) this person signed, sealed and delivered this document as the **Assistant Vice President** (title) of Mortgage Electronic Registration Systems, Inc., as nominee for Everbanc Mortgage Company LLC dba PRICELINEMORTGAGE, its successors and assigns the corporation named in this document;

    (b) this document was signed and delivered by the corporation as its voluntary act and deed by virtue of authority from its Board of Directors.

Signed and sworn to before me this

day of Jan. 31, 2017

*Carol A. Kuske*



CAROL A KUSKE
MY COMMISSION # GG052095
EXPIRES December 28, 2020

# EXHIBIT C

**McCABE, WEISBERG & CONWAY, P.C.**
Marisa Myers Cohen, Esquire - 017032001
Carol R. Cobb, Esquire - 028761994
Sheera G. Engrissei, Esquire - 009212010
Christopher J. Kelleher, Esquire - 005212000
Ian V. Gallo, Esquire - 163762015
Michael I. Gouda, Esquire - 001052012
James French, Esquire - 134352014
216 HADDON AVENUE, SUITE 201
WESTMONT, NEW JERSEY 08108
(856) 858-7080
ATTORNEYS FOR PLAINTIFF
Matter No 16-201311 - 16-201311

| | |
|---|---|
| EverBank,<br><br>              Plaintiff,<br><br>v.<br><br>John P. O'Grady aka John Patrick O'Grady<br>and Takako Hiral; Bank of America, N.A.<br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY<br><br><br><br>Docket No.<br><br>Civil Action<br>RESIDENTIAL MORTGAGE<br>FORECLOSURE COMPLAINT |

EverBank, the plaintiff ("Plaintiff") in the above entitled cause having its principal place of business at 301 W. Bay Street, Jacksonville, Florida 32202, says:

## FIRST COUNT

1.    On September 10, 2003, John P. O'Grady aka John Patrick O'Grady executed to Everbanc Mortgage Company LLC dba Pricelinemortgage, its successors and assigns, a Loan Agreement ("Note") to secure the sum of $650,000.00,with an interest rate of 3.625% per annum, subject to adjustment pursuant to the terms of the Note, payable in monthly installments of principal and interest. The Note further provides for a late charge of 5% for any payment not received 15 days from the due date.

2.    To secure the payment of the aforesaid obligation, John P. O'Grady aka John Patrick O'Grady executed to Mortgage Electronic Registration Systems, Inc., as nominee for Everbanc Mortgage Company LLC dba Pricelinemortgage, its successors and assigns, a

mortgage ("Mortgage") of even date with said Note and thereby created a lien on the land hereinafter described, on the express condition that such lien should be released if payment should be made at the time and times and in the manner described in said obligation.  Said Mortgage was recorded on April 26, 2005, in the Bergen County Clerk's/Register's Office, in Book 14295, at Page 299. The Mortgage is not a Purchase Money Mortgage.

2a.    Said Mortgage was assigned by Mortgage Electronic Registration Systems, Inc., as nominee for Everbanc Mortgage Company LLC dba Pricelinemortgage, its successors and assigns ("Assignor") to EverBank ("Assignee") by an assignment of mortgage ("Assignment of Mortgage") executed on January 31, 2017 and recorded on February 13, 2017, in the Bergen County Clerk's/Register's Office, in Book 02533, at Page 0978.

3.    The mortgaged property consists of all that certain land and premises situated in the Township of Mahwah, County of Bergen and State of New Jersey, bounded and described by Lot and Block description in the mortgage and attached hereto as Schedule A and is commonly known as 91 Midvale Mountain Road, Mahwah, New Jersey 07430.

4.    The obligation and Mortgage referred to in paragraphs 1 and 2 above are held by EverBank; and therefore, Plaintiff has the right to foreclose.

5.    The Note aforesaid contained an agreement that if any installment payment of interest/finance charges and principal (and taxes and insurance premiums, if applicable) should remain unpaid for 30 days after the date that the Notice of Default is mailed to the obligor, the whole principal sum, with all unpaid interest/finance charges, shall at the option of the above named mortgagee or its heirs, executors, administrators, representatives or assigns, become immediately due and payable.

6.    The following instruments appear of record which affect or may affect the property described in paragraph 3 above, all of which are subordinate to the Mortgage and Note referred to in paragraphs 1 and 2 above.

6a.     Bank of America, N.A. is hereby named a party defendant by virtue of a mortgage made by John P. O'Grady aka John Patrick O'Grady and Takako Hiral in the original amount of $132,000.00 dated October 15, 2005 and recorded on December 19, 2005, in the Bergen County Clerk's Office in Instrument no. 169503.

7.     Pursuant to the terms of the obligation and Mortgage referred to in paragraphs 1 and 2 above, the obligee named in said obligation reserved the right to pay taxes or other liens affecting the Property herein described, which liens are superior to the lien of the Mortgage referred to in paragraph 2 above and which liens, when paid by the obligee or assignee, together with interest thereon as provided in said obligation and Mortgage, are to be added to the amount due on the obligation and Mortgage. The obligee may be required to pay such liens during the pendency of this action and will demand that such payments so made by said obligee or assignee be added to the Mortgage debt as aforesaid.

8.     Defendant(s) named in paragraph 1 above, or the grantee or grantees, if any, of said Defendant(s), have defaulted in making the payment due to Plaintiff on July 1, 2016, as required by the terms of the Note and Mortgage referred to in paragraphs 1 and 2 above, and said payment has remained unpaid for more than 30 days from the date the Notice of Default was mailed, and it remains unpaid to date. Plaintiff, by reason off said default, elects that the whole unpaid principal sums due on the aforesaid Note and Mortgage referred to in paragraphs 1 and 2 above, together with all unpaid interest/finance charges and advances made thereon, shall now be due.

9.     Notice was given in compliance with the Fair Foreclosure Act more than 31 days ago.

10.     Any interest or lien that any of Defendant(s) has or claims to have in or upon the mortgaged premises, or some part thereof, is subject to Plaintiff's Mortgage Lien.

WHEREFORE, Plaintiff demands judgment:

(a)    Fixing the amount due on the Mortgage referred to in paragraph 2 above;

(b)    Barring and foreclosing Defendant(s) of all equity of redemption in and to the aforesaid lands;

(c)    Directing Plaintiff be paid the amount due to Plaintiff as provided in the Mortgage set forth in paragraph 2 above together with interest and costs;

(d)    Adjudging that the lands described in paragraph 3 above be sold according to the law to satisfy the amount due to Plaintiff on the Mortgage set forth in paragraph 2 above;

(e)    Appointing a receiver of the rents, issue and profits of the lands described in paragraph 3 above.

## SECOND COUNT

11.     Plaintiff repeats any and all allegations of the first count and makes same a part hereof as if repeated at length.

12.     By the terms of the Note and Mortgage referred to in paragraphs 1 and 2, Plaintiff is entitled to possession of the tract of land with the appurtenances as more particularly described in paragraph 3 above.

13.     By the terms of the Note and Mortgage, aforesaid becomes entitled to possession of the Property except as against those tenants protected under N.J.S.A. 2A:18-61.1, *et seq.* upon default.

14.     Defendants named in paragraph 1 and paragraph(s) 6 above have, or may claim to have, certain rights in the Property and by reason thereof have deprived Plaintiff herein of possession of the Property aforesaid since, upon Defendant's default.

WHEREFORE, Plaintiff demands judgment against Defendants except those persons protected under N.J.S.A 2A:18-61.1, *et seq:*

(a)     for possession of said property in favor of Plaintiff or its assignee or any purchaser at the foreclosure sale;

(b)     for costs.

## THIRD COUNT

1.  On September 10, 2003, John P. O'Grady aka John Patrick O'Grady executed to Everbanc Mortgage Company LLC dba Pricelinemortgage, its successors and assigns, a Note in the amount of $650,000.00.

2.  To secure the Note, John P. O'Grady aka John Patrick O'Grady executed a mortgage of even date. Said Mortgage was recorded April 26, 2005, in the Bergen County Clerk's/Register's Office, in Book 14295, at Page 299.

3.  Takako Hiral did not execute either the Note or the Mortgage in question, although she is an owner of said premises now and at the time Plaintiff's Mortgage was executed.

4.  The Plaintiff is entitled to an Order of this Court declaring the Plaintiff is the holder of an equitable mortgage on the said property described in the Plaintiff's Mortgage and as to the entire interest therein held by Takako Hiral and that such equitable mortgage is superior to the interest of all defendants.

5.  Takako Hiral benefitted directly from the mortgage.

WHEREFORE, the Plaintiff demands judgment:

(a)  Declaring an equitable mortgage on the subject property as to the entire interest therein held by Takako Hiral that such equitable mortgage is superior to the interest of all the defendants.

DESIGNATION OF TRIAL COUNSEL
Carol Rogers Cobb, Esq. is hereby designated as Trial Counsel

MCCABE, WEISBERG AND CONWAY, P.C.

By: _____
[ ] Marisa Myers Cohen, Esquire
[ ] Carol R. Cobb, Esquire
[✓] Sheera G. Engrissei, Esquire
[ ] Christopher J. Kelleher, Esquire
[ ] Ian V. Gallo, Esquire
[ ] Michael I. Gouda, Esquire
[ ] James French, Esquire
Attorneys for Plaintiff

Dated  4/17/ 2017

UNLESS YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE DEBT, OR ANY PART OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID.  IF YOU DO NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU.  ALSO UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.

# SCHEDULE A

### LEGAL DESCRIPTION

File Number: DT-AF33804

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Mahwah, County of Bergen and State of New Jersey:

BEING known and designated as Lot 159.02 in Block 1 as shown on map entitled "Midvale Mountain Estate Block 1 Lot 159, Township of Mahwah, Bergen County, N.J. Subdivision Plat", duly filed in Bergen County Clerk's Office on August 20, 2001 as Filed Map No. 9240.

BEING known as Lot(s)159.02 in Block 1 on the Tax Map of the Township of Mahwah.

CERTIFICATION PURSUANT TO RULE 4:64-1 (a)

I hereby certify that I received and reviewed a title search of public record good through the county board date of January 10, 2017 for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure.

Dated:  4/17/2017

MCCABE, WEISBERG AND CONWAY, P.C.

By: _____
[  ] Marisa Myers Cohen, Esquire
[  ] Carol R. Cobb, Esquire
[ ✓ ] Sheera G. Engrissei, Esquire
[  ] Christopher J. Kelleher, Esquire
[  ] Ian V. Gallo, Esquire
[  ] Michael I. Gouda, Esquire
[  ] James French, Esquire
Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other Court proceeding or arbitration and that, to the best of my knowledge and belief, no other parties need be joined at this time, and that no other proceedings are contemplated.

Dated:   4/17/2017

**MCCABE, WEISBERG AND CONWAY, P.C.**

By: _____

[  ] Marisa Myers Cohen, Esquire
[  ] Carol R. Cobb, Esquire
[ ✓ ] Sheera G. Engrissei, Esquire
[  ] Christopher J. Kelleher, Esquire
[  ] Ian V. Gallo, Esquire
[  ] Michael I. Gouda, Esquire
[  ] James French, Esquire
Attorneys for Plaintiff

CERTIFICATION PURSUANT TO RULE 1:38-7 (b)

In accordance with Rule 1:38-7(b), I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future.

Dated: 4/17/2017

MCCABE, WEISBERG AND CONWAY, P.C.

By: _____

[  ] Marisa Myers Cohen, Esquire
[  ] Carol R. Cobb, Esquire
[ ✓ ] Sheera G. Engrissei, Esquire
[  ] Christopher J. Kelleher, Esquire
[  ] Ian V. Gallo, Esquire
[  ] Michael I. Gouda, Esquire
[  ] James French, Esquire
Attorneys for Plaintiff

**CERTIFICATION OF DILIGENT INQUIRY TO BE ANNEXED TO
RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS PURSUANT
TO RULE 1:5-6(c)(1)(E) AND RULES 4:64-1(a) (2) AND (3)**

The undersigned attorney, of full age, hereby certifies and says:

1. On _4 /14 /17_, I communicated by written communication with the following named

   employee(s) of EverBank, who stated that he/she/they personally reviewed the complaint to be

   filed with the court and that he/she/they confirmed compliance with *Rule* 4:64-1(b)(1) through

   (b)(10) and (b)(12) through (b)(13).

2. The name, title and responsibilities of the plaintiff's employee(s) with whom I communicated

   is/are: Belinda Roane, Assistant Vice President, and review foreclosure documents.

3. Based on my communication with the above-named employee(s) of plaintiff, as well as my own

   inspection of the loan information supplied by plaintiff and other diligent inquiry, I execute this

   certification to comply with the requirements of Rules 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2)

   and (3).

4. I am aware that I have a continuing obligation under Rule 1:4-8 to amend this certification if a

   reasonable opportunity for further investigation or discovery indicates insufficient evidentiary

   support for any factual assertions proffered by plaintiff in any court filings or documents in this

   case.

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

**MCCABE, WEISBERG AND CONWAY, P.C.**

By: _____

[  ] Marisa Myers Cohen, Esquire
[  ] Carol R. Cobb, Esquire
[✓] Sheera G. Engrissei, Esquire
[  ] Christopher J. Kelleher, Esquire
[  ] Ian V. Gallo, Esquire
[  ] Michael I. Gouda, Esquire
[  ] James French, Esquire
Attorneys for Plaintiff

# EXHIBIT D

**McCABE, WEISBERG & CONWAY, LLC**
Marisa Myers Cohen, Esquire - 017032001
Carol R. Cobb, Esquire - 028761994
Christopher J. Kelleher, Esquire - 005212000
James French, Esquire – 134352014
Francis T. Tarlecki, Esquire – 908882012
John M. Kolesnik, Esquire –012412010
Shanna Lyn Spiro, Esquire – 212392017
216 HADDON AVENUE, SUITE 201
WESTMONT, NEW JERSEY 08108
(856) 858-7080
ATTORNEYS FOR PLAINTIFF
Matter No 16-201311 - 16-201311

| | |
|---|---|
| EverBank,<br><br>              Plaintiff,<br><br>vs.<br><br>John P. O'Grady a/k/a John Patrick O'Grady, et al.,<br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY<br><br>Docket No. F-009807-17<br><br>Civil Action<br><br>**FINAL JUDGMENT** |

Upon the application of the plaintiff, and it appearing that summons and complaint has been duly issued and return served upon all of the defendants, and their default having been entered; and the plaintiff's note and mortgage having been presented and marked as exhibits by the court;

And it appearing from the Affidavit filed herein that there is due to the Plaintiff the sum **$544,068.68** on its mortgage described in the complaint and sufficient cause appearing;

It is on this _____7_____ day of _____September, 2018, ORDERED AND ADJUDGED that the Plaintiff is entitled to have the sum of $**544,068.68**, together with lawful interest from **July 13, 2018** on the total sum due Plaintiff, together with costs of this suit to be taxed, and a counsel fee of $___5590.68_____ included therein, raised and paid of the mortgage premises described in said complaint;

And it is further ORDERED AND ADJUDGED that so much of the said mortgage premises as will be sufficient to raise and satisfy the said mortgage, interest and costs of the plaintiff and secondly the amount due to the answering defendant Bank of America, N.A. be sold, and that an execution do issue for that purpose out of this court directed to the sheriff of the County of Bergen commanding him to make sale, according to law, of so much of the said mortgaged premises as will be sufficient to satisfy the said mortgage, interest and costs; and that he pay out of the proceeds of the sale to the plaintiff or its attorney, its said debt, interest and costs and that in case there is a surplus, the same shall be brought into this Court and deposited with the Clerk subject to the order of this Court; and that said Sheriff make his report to this Court of the sale as required by the rules of this Court;

And it is further ORDERED AND ADJUDGED that the Plaintiff or the Purchaser at the foreclosure sale, duly recover against said defendants, John P. O'Grady a/k/a John Patrick O'Grady, Takako Hiral and Bank of America, N.A. or any one holding under them, possession of the premises mentioned and described in the complaint with the appurtenances and that a writ of possession issue thereon;

And it is further ORDERED AND ADJUDGED that all of the defendants to this action and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to so much of the said mortgage premises shall be sold as aforesaid under this judgment.

This Judgment shall not affect the rights of any person protected by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61.1 et seq.)

/s/ Edward A. Jerejian, J.S.C.

Respectfully Recommended
R.1:34-6 Office of Foreclosure

**McCABE, WEISBERG & CONWAY, LLC**
Marisa Myers Cohen, Esquire - 017032001
Carol R. Cobb, Esquire - 028761994
Christopher J. Kelleher, Esquire - 005212000
James French, Esquire – 134352014
Francis T. Tarlecki, Esquire – 908882012
John M. Kolesnik, Esquire –012412010
Shanna Lyn Spiro, Esquire – 212392017
216 HADDON AVENUE, SUITE 201
WESTMONT, NEW JERSEY 08108
(856) 858-7080
ATTORNEYS FOR PLAINTIFF
Matter No 16-201311 - 16-201311

| | |
|---|---|
| TIAA, FSB d/b/a TIAA Bank f/n/a EverBank,<br><br>Plaintiff,<br><br>v.<br><br>John P. O'Grady a/k/a John Patrick O'Grady, et al.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY<br><br>Docket No. F-009807-17<br><br>Civil Action<br><br>**PROOF OF AMOUNT DUE**<br>**AFFIDAVIT AND SCHEDULE** |

**Adriana Shoemaker**
_____, of full age being duly sworn according to law depose and say:

1.    I am employed by plaintiff at its ___ **Jacksonville, FL 32202** ___ (city/State) office as a ___**Assistant Vice President**___ ___**Assistant Vice President**___ (title).    My    responsibilities    in    this    position    are ___ *Document Review* ___. I am authorized to make this affidavit on the behalf of the plaintiff.

2.    I have thoroughly reviewed TIAA, FSB d/b/a TIAA Bank f/n/a EverBank's, books and business records concerning the note and mortgage loan described in the plaintiff's complaint.

3.    Said books and business records indicate that the default of the defendants-borrower(s) John P. O'Grady a/k/a John Patrick O'Grady, remains uncured and there is due to the plaintiff in this action the sum of $544,068.68, as set forth in the Proof of Amount Schedule

annexed hereto.  I have reviewed all entries and calculations, and they are correct.  Per diem

interest, as set forth in the annexed schedule, will accrue on the principal from July 13, 2018.

4.    The property described in the complaint in this action cannot be divided and

should be sold as a single tract.

5.    There are no just debts, set-off, credits or allowances due or to become due from

the Plaintiff, other than those set forth herein.

6.    The Plaintiff is entitled to enforce the aforesaid note and mortgage.

7.    I understand that the court will rely upon this affidavit in support of the plaintiffs

application for the foreclosure judgment in the within action.

Dated: 8/1/18

Name:  **Adriana Shoemaker**
Title:    **Assistant Vice President**

TIAA, FSB d/b/a TIAA Bank f/n/a EverBank


Sworn to and subscribed before me this

_1_ day of _August_ 20 _18_

**Esme Tomko**

Notary Public of the State of **Florida**

My Commission Expires:

Notary Public State of Florida
Esme Tomko
My Commission GG 042720
Expires 10/27/2020

## AMOUNT DUE SCHEDULE

NOTE AND MORTGAGE DATED  September 10, 2003
Recorded on April 26, 2005, in Bergen County, in Book 14295, page 299
Property address: 91 Midvale Mountain Road, Mahwah, New Jersey 07430
Mortgage holder: TIAA, FSB d/b/a TIAA Bank f/n/a EverBank

### STATEMENT OF AMOUNT DUE:

| | |
|---|---:|
| Unpaid principal balance | $461,404.45 |
| Interest from 06/01/16 to 07/13/18 (See attached breakdown) | $36,557.83 |
| Late Charges from 06/16/06 to 04/20/17 (See attached breakdown) | $1,480.44 |

Advances through 07/13/18 for:

| | | |
|---|---:|---:|
| Real Estate Taxes | $37,506.96 | |
| Home Owners Insurance Premium | $0.00 | |
| Mortgage Insurance Premium | $0.00 | |
| Hazard Insurance | $6,879.00 | |
| Inspections | $240.00 | |
| Winterizing/Securing | $0.00 | |
| Sub-Total of Advances | $44,625.96 | |
| Less Escrow Monies | ($0.00) | |
| Net advances | | $44,625.96 |
| Other charges | | $0.00 |
| TOTAL DUE AS OF DATE 07/13/18 | | $544,068.68 |

**Surplus money**: If after the sale and satisfaction of the mortgage debt, including costs and expenses, there remains any surplus money, the money will be deposited into the Superior Court Trust Fund and any person claiming the surplus, or any part thereof, may file a motion pursuant to Court Rules 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking for an order directing payment of the surplus money.  The Sheriff or other person conducting the sale will have information regarding the surplus, if any.

Date: *8/1/18*

Name: **Adriana Shoemaker**  **Assistant Vice President**
TIAA, FSB d/b/a TIAA Bank f/n/a EverBank

Note: Adopted as Appendix XII-J July 9, 2008 to be effective September 1, 2008
         Amended June 9, 2011 to be effective immediately

# EXHIBIT E



